## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **JAMMEL L. JOHNSON, #M11290,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:15-cv-00308-MJR** |
| | ) | |
| **ANTHONY MCCALLISTOR, and** | ) | |
| **UNKNOWN PARTY,**[1] | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff Jammel Johnson is currently incarcerated at the Big Muddy River Correctional Center in Ina, Illinois. (Doc. 1 at 1.) Proceeding *pro se*, Johnson has filed a civil rights action pursuant to 42 U.S.C. § 1983, as well as a state law claim for intentional infliction of emotional distress. (*Id.* at 9.) Johnson alleges that he was improperly strip searched by three prison officers in front of female staff during a prison sweep and was physically abused for objecting to the strip search by the same officers. (*Id.* at 9-10.) He also names Commander McCallistor in his suit, alleging that McCallistor was "in charge of [the] Orange Crush Tact team." (*Id.* at 1.)

This matter is now before the Court for a preliminary review of Johnson's complaint pursuant to 28 U.S.C. § 1915A. Under 28 U.S.C. § 1915A, the Court shall review a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a government entity." During this preliminary review, the court "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint," if the complaint "is

---

[1] Johnson's complaint separates the Unknown Party defendants into three individuals, which will be designated as John Does 1, 2, and 3 in this Order. The Clerk is directed to remove the Unknown Party Defendant and add John Doe 1, John Doe 2, and John Doe 3 to this case.

frivolous, malicious, or fails to state a claim on which relief may be granted" or if it "seeks monetary relief from a defendant who is immune from such relief."

## **Background**

According to Johnson's complaint, during the week of May 12, 2014, the Illinois Department of Corrections' Orange Crush Tactical Team performed a strip search of Johnson and several other inmates at Big Muddy Correctional Center. (Doc. 1 at 9.) Three officers – who Johnson names in his complaint as John Doe 1, John Doe 2, and John Doe 3 – performed the search of Johnson, ordering him to disrobe, bend at the waist, spread his buttocks, expose his rectum, lift his testicles, and pull back the foreskin on his penis. (*Id*.) Johnson claims that the officers performed this search "in the presence of female officers, who were not performing any penological duty." (*Id*.) Johnson also claims that Commander McCallistor was the "commander in charge of [the] Orange Crush Tact team." (*Id*. at 1.)

As the search was occurring, Johnson complained to the John Doe officers that he "did not want to be stripped in front of women." (*Id*. at 10.) In response, Johnson was "met with a barrage of threats of bodily harm." (*Id*.) As the search concluded, Johnson was also "forcefully pushed into another inmate while handcuffed," "repeatedly smacked on the back of the head and shoulders," and told to "keep [his] fucking head down" or he would "get [his] ass kicked." (*Id*.) According to Johnson, at the end of the search, the officers also did not allow Johnson to put on underwear or socks under his prison garb as he departed for the prison cafeteria. (*Id*.)

Johnson claims that he filed grievances about the search and exhausted his remedies "to no avail." (*Id*.) On March 10, 2015, Johnson brought the instant suit. (*Id*. at 1.)

<u>**Discussion**</u>

Construed liberally, Johnson's complaint alleges that John Doe 1, John Doe 2, and John Doe 3 performed an illegal search on him, and that McCallistor was in charge of the team to which those officers were assigned.  (*See id.* at 1, 9-10.)  In addition, Johnson claims that John Doe 1, John Doe 2, and John Doe 3 retaliated against him for complaining about the search, and that their retaliatory conduct similarly constituted excessive force.  (*See id.* at 10.)  Johnson may have intended to name Commander McCallistor in these claims as well.

To facilitate the management of future proceedings, and in accordance with the objectives of Federal Rules of Civil Procedure 8 and 10, the Court finds it appropriate to break the claims in Johnson's *pro se* complaint into numbered counts, as shown below.  The parties and the Court will use these designations in all pleadings and orders, unless otherwise directed by the Court.  The designation of these counts does not constitute an opinion as to their merit.

**COUNT 1:**    McCallistor, John Doe 1, John Doe 2, and John Doe 3 violated Johnson's Eighth Amendment rights by strip searching him in front of female guards.

**COUNT 2:**    McCallistor, John Doe 1, John Doe 2, and John Doe 3 violated Johnson's Fourth Amendment rights by strip searching him in front of female guards.

**COUNT 3:**    McCallistor, John Doe 1, John Doe 2, and John Doe 3 violated Johnson's First Amendment rights by retaliating against him for protesting the method of strip searching male inmates in the presence of female guards.

**COUNT 4:**    McCallistor, John Doe 1, John Doe 2, and John Doe 3 violated Johnson's Eighth Amendment rights by attacking him during the strip search.

**COUNT 5:**    McCallistor, John Doe 1, John Doe 2, and John Doe 3 intentionally caused Johnson to suffer severe emotional distress by strip searching him in the presence of female guards, in violation of Illinois law.

Concerning Johnson's Eighth Amendment claims related to the strip search at Big Muddy (**Count 1**), a strip search of an inmate violates the Eighth Amendment if it was "conducted in a

harassing manner intended to humiliate and cause psychological pain." *Mays v. Springborn*, 575 F.3d 643, 649 (7th Cir. 2009).   In this vein, not every strip search of a male prisoner with a female officer present violates the Eighth Amendment – if the search of a male prisoner in front of female officers was "conducted for a legitimate penological purpose," there would typically be no Eighth Amendment violation.  *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003).   In the end, circumstances dictate whether a search was legitimate or intended to humiliate a prisoner – "sexual ridicule and female spectators during a strip search can reasonably lead to the conclusion that the search was intended to humiliate," as can the lack of any "valid reason for a group strip search."  *May v. Trancoso*, 412 F. App'x 899, 902-03 (7th Cir. 2011).

Here, Johnson alleges that the strip search occurred with female officers present, and that those officers performed no "penological duty" during the search.  (*Id.* at 7.)  He also claims that there was no reason for the female officers' presence other than to humiliate.  (*Id.*)  Given these allegations, the complaint states an Eighth Amendment claim against the John Doe officers for preliminary review purposes, so **Count 1** will proceed for those officers.

While it is a closer question, the complaint also states a claim against Commander McCallistor related to the strip search.  To be sure, Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under § 1983, an individual defendant must have caused or participated in a constitutional deprivation."  *Pepper v. Vill. of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005).  Given this personal involvement requirement, "§ 1983 does not allow actions against individuals merely for their supervisory role."  *Zimmerman v. Tribble*, 226 F.3d 568, 574 (7th Cir. 2000).  "Rather, the supervisory officials also must have had some personal involvement in the constitutional deprivation, essentially directing or consenting to the challenged conduct."  *Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 614-15

(7th Cir. 2002).  In this case, Johnson alleges that McCallistor was in charge of the Orange Crush team, and McCallistor's position permits an inference that he was personally involved in directing the methods of the search.  That is enough to put forth a claim against McCallistor, at least for purposes of preliminary screening review.  *See Williams v. Faulkner*, 837 F.2d 304, 308 (7th Cir. 1988) (dismissal of complaint at § 1915 stage improper where role of supervisor was sufficiently close to unconstitutional conduct to infer some level of personal responsibility over it).  Accordingly, **Count 1** will also proceed against Commander McCallistor.

As for Johnson's claims related to the strip search pursuant to the Fourth Amendment (**Count 2**), those claims must be dismissed at the gate.  As a general matter, prisoner search claims are evaluated under the Eighth Amendment rather than the Fourth Amendment.  *See, e.g., Payette v. Hoenisch*, 284 F. App'x 348, 353 (7th Cir. 2008) ("[W]e have held that prisoner strip-search claims are better addressed under the Eighth Amendment."); *Peckham v. Wis. Dep't of Corr.*, 141 F.3d 694, 697 (7th Cir. 1998) ("[R]egardless of how one views the Fourth Amendment in this context, it is the Eighth Amendment that is more properly posed to protect inmates from unconstitutional strip searches, notably when their aim is punishment, not legitimate institutional concerns.").  Especially where the facts underlying the claims are the same and the Eighth Amendment claim is allowed to proceed, the Fourth Amendment claim is subject to dismissal.  *See Payette*, 284 F. App'x at 353.  Here, Johnson relies on the same facts for the Fourth Amendment strip search claims as he does for the Eighth Amendment strip search claims and his Eighth Amendment search claims are proceeding beyond preliminary review.  Accordingly, **Count 2** will be dismissed without prejudice as to all parties.

Johnson also alleges that McCallistor, John Doe 1, John Doe 2, and John Doe 3 retaliated against him for complaining about the search (**Count 3**), in violation of the First Amendment.

To be sure, prisoners have a First Amendment right to free speech, and restrictions on that right will be upheld only if they were "reasonably related to legitimate penological interests." *Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989). Once more, prison officials may not retaliate against an inmate for exercising his First Amendment rights. *Zimmerman*, 226 F.3d at 573. To put forth a retaliation claim, a prisoner must show that "he engaged in activity protected by the First Amendment," that "he suffered a deprivation that would likely deter First Amendment activity in the future," and that the "First Amendment activity was 'at least a motivating factor in the Defendants' decision to take the retaliatory action.'" *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (*quoting Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)).

In this case, Johnson alleges that he was subjected to threats and physical force by the John Doe officers shortly after he complained about the search, and that is enough to put forth a retaliation claim against those parties. *Zimmerman*, 226 F.3d at 574 (7th Cir. 2000) (complaint sufficient where grievance "was closely followed by the retaliatory act"). That said, Johnson's complaint does not suggest that McCallistor was personally involved with any retaliatory conduct, so the claim against him must fail. *See Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005) (affirming dismissal of retaliation claim as to members of committee and warden, as those individuals "did not participate in acts of retaliation"). Accordingly, **Count 3** will proceed for John Doe 1, John Doe 2, and John Doe 3, but is dismissed without prejudice as to McCallistor.

Johnson goes on to allege that McCallistor, John Doe 1, John Doe 2, and John Doe 3 engaged in excessive force against him after the search (**Count 4**), by virtue of the same retaliatory conduct laid out above. To put forth an excessive force claim, a prisoner must show that an assault occurred and that it was "carried out maliciously and sadistically, rather than as part of a good-faith effort to maintain or restore discipline." *Wilkins v. Gaddy*, 559 U.S. 34, 37-

38 (2010).  Critically, not "every malevolent touch by a prison guard gives rise to a federal cause of action" – an inmate who complains of a "'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim."  *Id.* (*quoting Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).  While some of Johnson's allegations appear to constitute only de minimis instances of force, Johnson states that he was "repeatedly smacked" on the head after the search by the John Doe officers.  (Doc. 1 at 8.)  Given the early stage of the case, the Court cannot determine whether this force was de minimis, so **Count 4** will proceed past review as to the John Doe officers.  However, **Count 4** must be dismissed as to McCallistor, as Johnson does not allege that McCallistor participated in any excessive force or that he was "idly standing by" the officers during the attack.  *Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000).

In addition, Johnson claims that McCallistor, John Doe 1, John Doe 2, and John Doe 3 are liable for intentional infliction of emotional distress under Illinois law (**Count 5**).  Where a district court has original jurisdiction over a civil action, as is the case here, it also has supplemental jurisdiction over related state claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the federal claims.  *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008).  Johnson's state law claim concerns the same facts as his § 1983 claims, so supplemental jurisdiction is appropriate.

Under Illinois law, a plaintiff claiming intentional infliction of emotional distress must demonstrate that the defendant intentionally or recklessly engaged in "extreme and outrageous conduct" that resulted in severe emotional distress.  *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1030 (7th Cir. 2006).  An emotional distress claim has three components: the conduct involved must be truly extreme and outrageous; the actor must either intend that his conduct inflict severe emotional distress or know that there is a high probability that his conduct will

cause severe distress; and the conduct must in fact cause severe distress.  *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988).  To be actionable, the defendant's conduct "must go beyond all bounds of decency and be considered intolerable in a civilized community."  *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001).  Liberally construed, Johnson's complaint alleges that the strip search conducted by the John Doe officers and directed by McCallistor was intended to and did cause Johnson severe emotional distress.  Accordingly, **Count 5** survives preliminary review as to McCallistor, John Doe 1, John Doe 2, and John Doe 3, and it may proceed.

One closing note concerning the John Doe officers:  these officers must be identified with particularity before service of the complaint can occur on any of them.  Where a prisoner's complaint states specific allegations describing the conduct of unknown prison officers sufficient to raise a constitutional claim against them, the prisoner should have the opportunity to engage in limited discovery in order to ascertain the identity of those defendants.  *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009).  In this case, guidelines for discovery aimed at identifying John Doe 1, John Doe 2, and John Doe 3 will be set by the magistrate judge, so that Plaintiff can identify those individuals.  Furthermore, because the Court cannot discern at this early stage whether McCallistor can assist in identifying these individuals, Big Muddy's warden shall be added as a defendant to this case, in his official capacity only and for the sole purpose of assisting with identification.  Once the John Doe officers are identified, Johnson shall file a motion to substitute the named individuals with these John Doe designates.  At that time, the warden may also file a motion seeking dismissal from this action.

**Disposition**

IT IS ORDERED that the **CLERK** is **DIRECTED** to **DISMISS** Defendant Unknown Party from this case.  The **CLERK** is **FURTHER DIRECTED** to **ADD** Defendant **John Doe 1**, **John Doe 2**, and **John Doe 3** to the docket sheet.

IT IS FURTHER ORDERED that, for the reasons stated, **COUNT 1** shall **PROCEED** against **MCCALLISTOR**, **JOHN DOE 1**, **JOHN DOE 2**, and **JOHN DOE 3**.

IT IS FURTHER ORDERED that **COUNT 2** is **DISMISSED** without prejudice.

IT IS FURTHER ORDERED that **COUNT 3** shall **PROCEED** against **JOHN DOE 1**, **JOHN DOE 2**, and **JOHN DOE 3**.  **COUNT 3** is **DISMISSED** without prejudice as to **MCCALLISTOR**.

IT IS FURTHER ORDERED that **COUNT 4** shall **PROCEED** against **JOHN DOE 1**, **JOHN DOE 2**, and **JOHN DOE 3**.  **COUNT 4** is **DISMISSED** without prejudice as to **MCCALLISTOR**.

IT IS FURTHER ORDERED that **COUNT 5** shall **PROCEED** against **MCCALLISTOR**, **JOHN DOE 1**, and **JOHN DOE 2**.

IT IS FURTHER ORDERED that the **CLERK** is **DIRECTED** to **ADD BIG MUDDY RIVER CORRECTIONAL CENTER'S WARDEN** as a defendant, in his or her official capacity only, for the sole purpose of responding to discovery aimed at identifying **JOHN DOE 1**, **JOHN DOE 2**, and **JOHN DOE 3**.

IT IS FURTHER ORDERED that Plaintiff's Motion for Service of Process at Government Expense (Doc. 3) is **GRANTED**.  Service shall be ordered as indicated below.

IT IS FURTHER ORDERED that the Clerk of Court shall prepare for Defendants **MCCALLISTOR** and **BIG MUDDY RIVER CORRECTIONAL CENTER'S WARDEN**:

(1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on the John Doe defendants until such time as Plaintiff has identified them by name in a properly filed amended complaint. It is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered) a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Stephen C. Williams for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to United States Magistrate Judge Stephen C. Williams for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1)

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: April 8, 2015**

> **s/ MICHAEL J. REAGAN**
> **Chief Judge Michael J. Reagan**
> **United States District Judge**